MORGAN, LEWIS & BOCKIUS LLP
David L. Schrader, Bar No. 149638
david.schrader@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel: +1.213.612.2500
Fax 1.213.612.2501

Mark A. Feller, Bar No. 319789
mark.feller@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000
Fax: +1.415.442.1001

*Attorneys for Defendant
Tesla, Inc.*

Brian M. Ercole
(admitted *pro hac vice*)
brian.ercole@morganlewis.com
Matthew M. Papkin
(admitted *pro hac vice*)
matthew.papkin@morganlewis.com
600 Brickell Ave, Suite 1600
Miami, FL  33131-3075
Tel: +1.305.415.3000
Fax: +1.305.415.3001

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

ALEJANDRO CORONA, ANITA JACKSON NEWMAN, and CABANILLAS & ASSOCIATES, P.C., on behalf of themselves and the general public,

Plaintiffs,

vs.

TESLA, INC., a Delaware Corporation,

Defendant.

**AND RELATED CASE**

IRENA ZAKS and GARY ZAKS, on behalf of members of the general public,

Plaintiffs,

vs.

TESLA, INC. d/b/a in California as TESLA MOTORS, INC. and Does 1 to 100,

Defendants.

Case No. 4:23-cv-03902-YGR

AND

Case No. 4:23-cv-05556-YGR

**DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Judge:        Hon. Yvonne Gonzalez Rogers
Hearing Date: January 30, 2024 at 2:00 p.m.
Courtroom:    1 –4th Flr

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................................. 1

II.   ALL OF PLAINTIFFS' CLAIMS ARE PREEMPTED. .................................................... 2

      A.    Plaintiffs Concede That Any Claim Based Upon EPA-Mandated Driving
            Range Estimates Is Preempted. ....................................................................... 2

      B.    Plaintiffs' Claims Based Upon The Estimated Range Displayed On Vehicle
            Dashboards Are Also Preempted. ..................................................................... 2

            1.    Plaintiffs' "Dashboard" Theory Is Expressly Preempted ........................... 3

            2.    Plaintiffs' Claims Are Impliedly Preempted ................................................. 7

III.  PLAINTIFFS' OPPOSITION CONFIRMS THAT CABANILLAS & ASSOCIATES,
      P.C. FAILS TO MAKE A PRIMA FACIE SHOWING OF PERSONAL
      JURISDICTION. ........................................................................................................... 8

IV.   THE CORONA PLAINTIFFS DO NOT SEEK PUBLIC INJUNCTIVE RELIEF AND
      CANNOT ASSERT CLAIMS "ON BEHALF OF THE PUBLIC." .............................. 10

      A.    Corona Plaintiffs Do Not Seek Public Injunctive Relief. ..................................... 10

      B.    Plaintiffs Cannot Seek Relief On Behalf Of The Public. ...................................... 13

      C.    Public Injunctive Relieve Is Unavailable Under GBL Section 349. ...................... 14

V.    PLAINTIFFS' CLAIMS ARE PRECLUDED BY SAFE-HARBOR DOCTRINES. ....... 14

VI.   THE CALIFORNIA PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE UCL ... 15

      A.    Plaintiffs Do Not And Cannot Allege Reliance. ................................................. 15

      B.    Plaintiffs Do Not And Cannot Satisfy Rule 9(b). .............................................. 16

            1.    Plaintiffs Fail To Allege An "Unlawful" Act. ........................................... 17

            2.    Plaintiffs Fail To Allege An "Unfair" Act. ................................................. 19

            3.    Plaintiffs Fail To Allege Any "Fraudulent" Act. ....................................... 19

VII.  PLAINTIFF CABANILLAS & ASSOCIATES FAILS TO STATE A CLAIM. ............ 22

VIII. CONCLUSION .............................................................................................................. 25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Acedo v. DMAX, Ltd.*,
  2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) .................................................................... 18

5

6

*Am. Suzuki Motor Corp. v. Superior Court*,
  37 Cal. App. 4th 1291 (1995) ............................................................................................ 17

7

8

*Ayunan v. Caktiong*,
  No. CV 15-9355-RSWL-PLAX, 2016 WL 738288 (C.D. Cal. Feb. 23, 2016) ...................... 9

9

*Baldeo v. Airbnb, Inc.*,
  No. 20CV7771PGGVF, 2023 WL 7689652 (S.D.N.Y. Sept. 29, 2023) ................................ 24

10

11

*Ballard v. Bhang Corp.*,
  2020 WL 6018939 (C.D. Cal. Sept. 25, *2020*) .................................................................. 13

12

13

*Barakezyan v. BMW of N. Am., LLC*,
  2016 WL 11505592 (C.D. Cal. May 19, 2016) .................................................................. 17

14

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ............................................................................................ 17

15

16

*Brett v. Toyota Motor Sales, U.S.A., Inc.*,
  No. 608CV-1168-ORL-28GJK, 2008 WL 4329876 (M.D. Fla. Sept. 15, 2008) ................ 20

17

18

*Brown v. Madison Reed, Inc.*,
  No. 21-CV-01233-WHO, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ...................... 11, 13

19

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ........................................................................................................... 8

20

21

*Catalano v. BMW of N. Am., LLC*,
  167 F. Supp. 3d 540 (S.D.N.Y. 2016) ................................................................................ 24

22

*Chakraborty v. Visa Inc.*,
  2022 WL 19692039 (N.D. Cal. Aug. 19, 2022) (Gonzalez Rogers, J.) .............................. 15

23

24

*Chiarelli v. Nissan N. Am., Inc.*,
  No. 14-CV-4327 NGG VVP, 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015) ................ 23, 24

25

26

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................................ 9

27

28

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ........................................................................................................... 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

*Doe v. Epic Games, Inc.*,
   435 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................................. 19

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,
   No. CV 09-5457 PSG (CTX), 2014 WL 12558848 (C.D. Cal. May 30, 2014)..................... 16

*DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh*,
   No. 15 CIV. 2259 (PGG), 2021 WL 3141672 (S.D.N.Y. July 26, 2021).............................. 24

*Farr v. Acima Credit LLC*,
   No. 4:20-CV-8619-YGR, 2021 WL 5161923 (N.D. Cal. Nov. 5, 2021).............................. 14

*Fernandez v. Bridgecrest Credit Co., LLC.*,
   2022 WL 898593 (9th Cir. Mar. 28, 2022) ............................................................... 12

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
   No. 13-MD-2450 KMK, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)........................... 3, 5

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs.
   Litig.*, 2022 WL 551221 (E.D. Mich. Feb. 23, 2022) .......................................... 3, 4

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs.
   Litig.*,
   65 F.4th 851 (6th Cir. 2023).................................................................................... 7

*Friedman v. 24 Hour Fitness USA, Inc.*,
   580 F. Supp. 2d 985 (C.D. Cal. 2008).................................................................... 14

*Friedman v. PopSugar, Inc.*,
   No. 218CV05888CASMAAX, 2018 WL 6016963 (C.D. Cal. Oct. 29, 2018) ...................... 9

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)......................................................... 23

*Garlough v. FCA US LLC*,
   No. 2:20-CV-01879-JAM-AC, 2021 WL 4033177 (E.D. Cal. Sept. 3, 2021) ...................... 21

*Gentry v. Hyundai Motor America, Inc.*,
   2017 WL 354251 (W.D. Va. Jan. 23, 2017) ....................................................... 4, 15

*Gray v. Toyota Motor Sales, U.S.A.*,
   2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ........................................................... 20

*Green v. SweetWorks Confections, LLC*,
   2019 WL 3958442 (S.D.N.Y. Aug. 21, 2019) ....................................................... 14

*Greenley v. Avis Budget Grp. Inc.*,
   No. 19-CV-00421-GPC-AHG, 2020 WL 1493618 (S.D. Cal. Mar. 27, 2020) ............... 11, 13

iv
DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

*Hall v. SeaWorld Entertainment, Inc.*,
   747 F. App'x 449 (9th Cir. 2018) ........................................................................ 19

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................... 18, 19, 21

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 171 N.E.3d 1192, ................................................. 22

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) .......................................................................... 19, 21

*Hurst v. BMW of N. Am., LLC*,
   2023 WL 4760442 (D.N.J. July 26, 2023) ........................................................ 3, 7

*Knowles v. ARRIS Int'l PLC*,
   847 F. App'x 512 (9th Cir. 2021) ........................................................................ 21

*Knowles v. Arris Int'l PLC*,
   No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019), ....... 17, 23

*Kuehl v. Gen. Motors LLC*,
   No. 2:23-CV-06980-SB-SK, 2023 WL 8353784 (C.D. Cal. Nov. 17, 2023) ........ 18

*Loomis v. Slendertone Distrib., Inc.*,
   420 F. Supp. 3d 1046 (S.D. Cal. 2019) ............................................................... 16

*M Resorts, Ltd. v. New England Life Ins. Co.*,
   2019 WL 6840396 (S.D. Cal. Dec. 16, 2019) ..................................................... 11

*Mack v. LLR, Inc.*,
   2018 WL 6927860 (C.D. Cal. Aug. 15, 2018) ............................................... 13, 14

*Manchanda v. Educ. Credit Mgmt. Corp.*,
   No. 19 CIV. 5121 (LGS), 2022 WL 137885 (S.D.N.Y. Jan. 14, 2022), .............. 14

*McGill v. Citibank, N.A.*,
   393 P.3d 85 (2017) .......................................................................................... 11, 13

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
   863 F. Supp. 2d 928 (N.D. Cal. 2012) ................................................................ 16

*Metro Taxicab Bd. of Trade v. City of New York*,
   615 F.3d 152 (2d Cir. 2010) ................................................................................ 4

*Morrison v. Barcel USA, LLC*,
   2019 WL 95477 (S.D.N.Y. Jan. 2, 2019) ........................................................... 14

*Nathan Kimmel, Inc. v. DowElanco*,
   275 F.3d 1199 (9th Cir. 2002) .............................................................................. 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) .................................................................................. 22

*Netlist, Inc. v. Diablo Techs., Inc.*,
   2015 WL 1887261 (N.D. Cal. Apr. 24, 2015) ...................................................... 19

*Nezri v. PayPal, Inc.*,
   606 F. Supp. 3d 985 (C.D. Cal. 2022) .................................................................. 12

*Oden v. Bos. Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) .................................................................. 23

*Paduano v. Am. Honda Motor Co.*,
   169 Cal. App. 4th 1453, 88 Cal. Rptr. 3d 90 (2009) ..................................... 3, 5, 20

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ............................................................ 15, 16

*In re Plum Baby Food Litig.*,
   2022 WL 16640802 (N.D. Cal. Jan. 12, 2022) ...................................................... 18

*Power Quality & Electrical Systems, Inc. v. BP West Coast Products LLC*,
   2016 WL 6524408 (N.D. Cal. Nov. 3, 2016) ........................................................ 18

*Santana v. Amazon.com, Inc.*,
   No. CV 19-01949-AB (SSX), 2019 WL 13295793 (C.D. Cal. Nov. 5, 2019) ........ 9

*Stock v. Wells Fargo*,
   2023 WL 5505839 (C.D. Cal. July 13, 2023) ....................................................... 12

*Torres v. Veros Credit LLC*,
   2023 WL 5505887 (C.D. Cal. July 13, 2023) ....................................................... 12

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
   862 F. Supp. 2d 1009 (N.D. Cal. 2012) ................................................................ 16

*Troup v. Toyota Motor Corp.*,
   545 F. App'x 668 (9th Cir. 2013) ......................................................................... 17

*Urb. v. Tesla, Inc.*,
   No. 22-CV-07703-PCP, 2023 WL 6796021 (N.D. Cal. Oct. 13, 2023) ................ 18

*Vallarta v. United Airlines, Inc.*,
   497 F. Supp. 3d 790 (N.D. Cal. 2020) .................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   349 F. Supp. 3d 881 (N.D. Cal. 2018) .................................................................... 5

*Wai Chu v. Samsung Electronics America, Inc.*,
   No. 1:18-CV-11742-GHW, 2020 WL 1330662 (S.D.N.Y. Mar. 23, 2020) .......... 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

*Wellons v. Nw. Airlines, Inc.*,
   165 F.3d 493 (6th Cir. 1999) ........................................................................................ 4

*Wood v. Motorola Mobility, Inc.*,
   No. C-11-04409-YGR, 2012 WL 892166 (N.D. Cal. Mar. 14, 2012) ............................ 10, 15

*Woods v. Maytag Co.*,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011) ........................................................................ 23, 24

*Woody v. Coinbase Glob., Inc.*,
   2023 WL 6882750 (N.D. Cal. Oct. 17, 2023) ................................................................ 11, 12

*Yung Kim v. Gen. Motors, LLC*,
   99 F. Supp. 3d 1096 (C.D. Cal. 2015) ........................................................................... 4, 5

**Statutes**

49 U.S.C. § 32919(a) ....................................................................................................... 3, 4

49 U.S.C. § 32919(b) ..................................................................................................... 3, 4, 6

DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

1    I.    **<u>INTRODUCTION</u>**

2          Federal law preempts each claim asserted in the *Corona* action, which is the subject of this

3    motion to dismiss, and in the other related actions.  Plaintiffs acknowledge that any claim that Tesla

4    supposedly exaggerated estimated driving ranges to consumers is preempted by federal law,

5    because the estimates are EPA-mandated and state law cannot regulate the disclosure of EPA-

6    approved fuel economy estimates.  In an attempt to avoid preemption, Plaintiffs now seek to

7    disclaim that theory and, instead, purport to pursue claims based only on the "in-vehicle" range

8    estimates displayed on the dashboard of Tesla vehicles.  These claims, however, also are preempted

9    because, as the *Corona* Plaintiffs acknowledge, the "in-vehicle" estimates are programmed to track

10   the EPA-approved estimates.  Thus, Plaintiffs' alternative theory is just another impermissible

11   attack on what the EPA expressly approved.

12         Plaintiffs' attempt to avoid dismissal under this alternative theory fails for another

13   fundamental reason:  Plaintiffs do not and cannot allege that they were exposed to, much less relied

14   on, the in-vehicle range estimates prior to purchase.  Plaintiffs allege no facts – nor could they – to

15   support a claim that they were misled into purchasing their vehicles based on the in-vehicle range

16   estimates.  This alone requires dismissal of the actions.

17         The claims fail as a matter of controlling law for other reasons, too.  Plaintiffs do not plead

18   facts to support a UCL claim under any prong; they have not pled a request for public injunctive

19   relief; no personal jurisdiction exists over the claims brought by the New York law firm; and the

20   New York law firm did not even purchase the vehicle at issue and does not plead a claim.

21         Rather than meaningfully address Tesla's dispositive arguments, the Opposition ignores

22   many of them, fails to distinguish key controlling cases, relies on irrelevant cases that contradict

23   Plaintiffs' positions, and makes legal arguments unsupported by any factual allegations.  Because

24   these fundamental defects cannot be cured, the claims brought by the *Corona* Plaintiffs should be

25   dismissed without leave to amend.

26

27

28

DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

1  **II.    ALL OF PLAINTIFFS' CLAIMS ARE PREEMPTED.**

2          Consistent with the Court's direction, Tesla moved to dismiss all claims in the *Corona* and

3  *Zaks* cases.[1]   The Court also allowed Plaintiffs in the related *Porter* and *Van Diest* cases to file

4  amicus briefs.  This reply addresses the arguments advanced by the *Corona*, *Porter*, and *Van Diest*

5  plaintiffs (collectively referred to herein as "Plaintiffs").

6          Plaintiffs collectively assert two theories of liability:  (1) the EPA-mandated range estimates

7  for vehicles on Tesla's website allegedly overstate the vehicles' actual driving range; and (2) the

8  in-vehicle range estimates displayed on the dashboard of Tesla vehicles allegedly overstate the

9  actual driving range.  Plaintiffs now concede that the first theory is preempted.  As demonstrated

10 below, the second theory is as well.

11         **A.    Plaintiffs Concede That Any Claim Based Upon EPA-Mandated Driving**

12                 **Range Estimates Is Preempted.**

13         Plaintiffs acknowledge that federal law preempts claims that Tesla disclosed or advertised

14 EPA-mandated ranges which supposely do not accurately predict the actual driving range.  (Mot.

15 7–12; Opp'n 9.)  Indeed, Plaintiffs admit that "Tesla correctly explains the state of the law on this

16 discrete issue." (*Porter* and *Van Diest* Plaintiffs' *Amicus Curiae* Brief ("*Porter* Br.") 2.)[2]  Thus,

17 each Plaintiff's claims based on Tesla disclosing or advertising its vehicles' EPA-mandated ranges

18 must be dismissed as preempted.  Those are the only claims brought by the *Porter* and *Van Diest*

19 Plaintiffs, as they did not attempt to plead claims based on any purported inaccuracy of the range

20 estimates displayed on the dashboard of their vehicles.  They did not do so for good reason.

21         **B.    Plaintiffs' Claims Based Upon The Estimated Range Displayed On Vehicle**

22                 **Dashboards Are Also Preempted.**

23         The *Corona* Plaintiffs seek to salvage their cases by arguing that their claims are also based

24 on the estimated range displayed on the dashboard of their vehicles.  Specifically, these Plaintiffs

25 allege that Tesla "programmed its software to display mileage readings on its vehicles' dashboard

26

27 _____

   [1]     Tesla has not separately addressed the *Zaks* Plaintiffs' claims in this reply because the
28 Court granted their motion to remand shortly before the filing of this reply and the *Zaks* Plaintiffs
   did not submit a substantive opposition to Tesla's motion to dismiss.
   [2]     That brief was filed in *Van Diest v. Tesla, Inc.*, No. 4:23-cv-04098-YGR at ECF No. 34.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

range meters that reflected the advertised projections" [i.e., the EPA-mandated estimates].  (*Corona* Am. Compl. ¶ 13.)  In other words, based on their own allegations, the *Corona* Plaintiffs' alternative theory seeks to hold Tesla liable for disclosing the EPA-mandated estimated range through their vehicle dashboards.  Federal preemption prohibits that result.

### 1. <u>Plaintiffs' "Dashboard" Theory Is Expressly Preempted</u>.

Under the express preemption provision of the EPCA, "a State . . . may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles."  49 U.S.C. § 32919(a).  In addition, the statute makes clear that "a State or a political subdivision of a State may adopt or enforce a law or regulation on disclosure of fuel economy or fuel operating costs for an automobile covered by [49 U.S.C.] section 32908 **only if** the law or regulation is **identical** to that requirement."  49 U.S.C. § 32919(b) (emphasis added).

Plaintiffs argue that preemption is disfavored as to ambiguous preemption clauses, and that Section 32919(b) "does <u>not</u> expressly prohibit another state law."  (Opp'n 5.)  It unambiguously does.  Based on the plain language of the provision, a state cannot adopt or enforce a law regarding the disclosure of fuel economy for an automobile that is not "identical" to the requirements of Section 32908.  49 U.S.C. § 32919(b).  For that reason, courts have dismissed consumer protection claims regarding EPA-mandated fuel economy estimates, like those asserted here, as expressly preempted.  *See, e.g.*, *Hurst v. BMW of N. Am., LLC*, 2023 WL 4760442, at *4 (D.N.J. July 26, 2023) ("that claim is also expressly preempted by 49 U.S.C. § 32919, which provides that 'a State ... may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles' or related to 'disclosure of fuel economy or fuel operating costs' that differs from federal law"); *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 2022 WL 551221, at *13 (E.D. Mich. Feb. 23, 2022) (same), *aff'd*, 65 F.4th 851 (6th Cir. 2023), *cert denied sub nom. LLoyd v. Ford Motor Co.*, 144 S. Ct. 332 (2023).  Indeed, the cases upon which Plaintiffs seek to rely recognize that Section 32919(b) expressly preempts state laws or regulations "based 'on' disclosure of fuel economy or fuel operating costs."  *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1478, 88 Cal. Rptr. 3d 90, 111 (2009); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 KMK, 2015 WL 7018369, at *27

1   (S.D.N.Y. Nov. 12, 2015) (dismissing as expressly preempted by Section 32919(b) claims based

2   on "[t]he use of EPA estimates themselves"); *Yung Kim v. Gen. Motors, LLC*, 99 F. Supp. 3d 1096,

3   1104 (C.D. Cal. 2015) (claims based on "the disclosure of the EPA estimate itself" would be

4   preempted Section 32919(b)).[3]

5       Plaintiffs do not distinguish the authorities cited by Tesla in any meaningful way.  They

6   argue that in *Gentry v. Hyundai Motor America, Inc.*, 2017 WL 354251 (W.D. Va. Jan. 23, 2017),

7   the "claims premised on the vehicle on-board mileage calculator were permitted to proceed."

8   (Opp'n 11.)  Not so.  The false advertising claims based on that theory were dismissed for failure

9   to allege exposure to any pre-purchase statements about the on-board mileage calculator.  *Gentry*,

10  2017 WL 354251, at *7 & n.2.[4]  Also, unlike here, in *Gentry* the defendant supposedly falsely

11  "represented that Elantra's on-board mileage ***calculators*** would give 'accurate' MPG assessments."

12  *Id.* at *3 (emphasis added).  Here, as Plaintiffs allege, the on-board ***estimates*** are programmed to

13  track the EPA-mandated ***estimates***.  The claims here are therefore preempted.

14      Plaintiffs likewise ignore the district court's holding in *In re Ford Motor Co. F-150 &*

15  *Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*  There, the court held that any claims based

16  upon the inclusion of EPA-mandated ranges in Ford's advertisements were expressly preempted

17  by Section 32919(b).  2022 WL 551221, at *13.  EPCA clearly and expressly preempts state laws

18  and regulations on disclosure of fuel economy, including EV range.

19      Plaintiffs next argue that their claims are not expressly preempted insofar as they go beyond

20  Tesla's disclosure of the EPA-mandated range.  (Opp'n 8–9.)  In the cases they cite, unlike here,

21  the plaintiffs specifically identified "additional assertions, *beyond* the disclosure of the mileage

---

[3]     Plaintiffs also argue that Section 32919(a) cannot preempt consumer protection claims because "[t]he 'related to' language in this regulation does not overcome the strong presumption against preemption" for consumer protection claims alleging unfair business practices.  (Opp'n 12.)  Far from creating any ambiguity, the "related to" language "express[es] a broad pre-emptive purpose."  *Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 495 (6th Cir. 1999) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)); *Metro Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156-57 (2d Cir. 2010) (holding that the "related to" language in Section 32919(a) should be interpreted consistent with other statutory preemption provisions containing that phrase and citing case law noting its "expansive" nature).

[4]     Only a Virginia lemon law claim pertaining to the on-board mileage calculator was allowed to proceed based upon unique provisions of that statute.  *Id.* at *7.

estimates, that are untrue or misleading." *Paduano*, 169 Cal. App. 4th at 1477 ("Paduano's claims are based on statements Honda made in its advertising brochure to the effect that one may drive a Civic Hybrid in the same manner as one would a conventional car, and need not do anything 'special,' in order to achieve the beneficial fuel economy of the EPA estimates."); *Yung Kim*, 99 F. Supp. 3d at 1104 ("Plaintiff cites to additional statements, made in advertisements rather than on a Monroney label, that Plaintiff alleges could lead a reasonable consumer to believe that the vehicle is capable of achieving these EPA estimates under real world conditions."); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *25, 27 (identifying allegations of "Defendant's guarantees of a real-world fuel economy that go beyond including EPA estimates in advertisements" but holding that "[t]he use of EPA estimates themselves" is expressly preempted.). No such allegations are made by any of the four sets of Plaintiffs here.

Plaintiffs also argue that "Tesla designed software that manipulated its in-vehicle information reader to show mileage exceeding the vehicles' range." (Opp'n 9.)  In making this argument, Plaintiffs ignore and contradict their own allegations that Tesla designed the in-vehicle information reader to align with the EPA-mandated range.  (Mot. 9 (quoting *Corona* Am. Compl. ¶ 13).)  And as they concede, any claims that Tesla "reiterate[d] . . . the content of federally required disclosures, are indeed the type which are appropriately preempted."  (Opp'n 8 (quoting *Young*, 2018 WL 1710181, at *4–5).)  As a result, allegations that the EPA-mandated range is repeated on the dashboard of Tesla vehicles cannot avoid preemption.

Plaintiffs also rely for support on *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349 F. Supp. 3d 881 (N.D. Cal. 2018) ("*Clean Diesel 1*") and *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 959 F.3d 1201, 1219 (9th Cir. 2020) (*Clean Diesel 2*).  These cases have no bearing here.  The preemption analyses in those cases involved a different statute (Section 209(a) of the Clean Air Act) that courts unanimously have held "does not preempt consumers' fraud based claims." *Clean Diesel 1*, 349 F. Supp. 3d 881, 911.  The plaintiffs in *Clean Diesel 1* alleged that Volkswagen concealed that its vehicles emitted nitrogen oxides at levels that were sometimes 40 times higher than EPA's legal limit.  *Id.* at 890. Volkswagen argued that the claims were preempted because "Plaintiffs are using state law to

'attempt to enforce' federal 'standard[s] relating to the control of emissions from new motor vehicles.'" *Id.* at 910.  In contrast, Tesla has not claimed that Plaintiffs are attempting to **enforce** EPA regulations through their lawsuits.  Plaintiffs, instead, seek to require Tesla to disclose something different than the EPA-approved range estimates for its vehicles.  The preemption provision at issue prohibits those very claims.  49 U.S.C. § 32919(b) (preempting state law that is not "identical" to federal law "on disclosure of fuel economy or fuel operating costs for an automobile").[5]

The *Porter* and *Van Diest* Plaintiffs offer no different legal analysis on express preemption. Nor could they.  Although they now complain that Tesla supposedly exaggerated the estimated range displayed on their vehicle dashboards, the *Porter* and *Van Diest* Plaintiffs do not plead any facts to show that their vehicle dashboards provide inaccurate driving range information.  Their allegations, instead, assert only the theory they acknowledge is preempted:  that the EPA-mandated "advertised range" on the Tesla website for their vehicles does not reflect the actual driving range.[6] The *Van Diest* Plaintiffs make explicit that it was "the driving range misrepresentations on Tesla's website" (*i.e.*, the EPA-mandated estimated ranges) that supposedly misled them.  (*Van Diest* Compl. ¶¶ 46, 55.)  And both Complaints rest their claims on images of disclosures of the EPA-mandated estimated range on Tesla's website.  (*Porter* Am. Compl. at 7–10 (identifying estimates as "EPA Est."); *Van Diest* Compl. at 6–7, 24–34 (same).)

Lastly, the *Porter* and *Van Diest* Plaintiffs argue against preemption on the basis that Tesla supposedly "marketed" that its "vehicles had some of the longest driving ranges in the electric vehicle market."  (*Porter Br.* 2.)  But no Complaint identifies any such marketing.  No Complaint alleges that any Plaintiff ever reviewed, looked at, or relied upon any such marketing at any point in time.  And no Plaintiff alleges that this unpled marketing statement is untrue.  The *Amicus* Brief

---

[5]     In *Clean Diesel 2*, the Ninth Circuit held that section 209(a) expressly preempted "the Counties' imposition of anti-tampering rules on pre-sale vehicles."  *Clean Diesel 2*, 959 F.3d 1201, 1217.  The decision does not help Plaintiffs.

[6]     *Porter* Am. Compl. ¶¶ 128 (Porter), 140 (Perez), 152 (Estepanian), 163 (Romanez), 175 (Kupriiets), 187 (Kreuzer), 200 (Nadir), 214 (Brown); *Van Diest* Compl. ¶¶ 51 ("Van Diest found that the actual driving range of his Model 3 Long Range was far less than Tesla's advertised driving range."), ¶ 59 ("Khalikulov's Model 3, fully charged, indicates that the vehicle has 281 miles of range as opposed to the 322 miles advertised by Tesla").

6

DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

purports to quote a customer support page on Tesla's website that the *Porter* and *Van Diest* Plaintiffs claim to be an example of an advertisement (*Porter* Br. 2), but it is not referenced anywhere in any Complaint.  In short, this newly contrived marketing theory is entirely untethered to any Plaintiff or Complaint, and it cannot avoid preemption.

### 2.    Plaintiffs' Claims Are Impliedly Preempted.

Plaintiffs do not meaningfully respond to Tesla's conflict preemption arguments either; instead, they contest field preemption (which Tesla did not assert).  (Mot. 9–12; Opp'n 6–8.)  The few lines Plaintiffs devote to conflict preemption do not help them.

Plaintiffs acknowledge that conflict preemption applies "where 'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Opp'n 7 (quoting *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990)).)  Plaintiffs do not dispute that Congress established a comprehensive federal scheme for consumers to compare vehicles across manufacturers based upon EV range information; that the EPA requires manufacturers to disclose EPA-approved estimates; that the FTC requires manufacturers to use those range estimates in advertising referring to EV range performance; and that the EPA and FTC have substantial enforcement powers to address any alleged fraud related to a manufacturer's representations of its vehicles' estimated range.   (Mot. 9–10; Opp'n 6–7.)  As a matter of law, Plaintiffs' claims should be dismissed as impliedly preempted.  *See, e.g.*, *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th at 864 (finding plaintiff's claims impliedly preempted because they infringe upon the federal scheme of regulating fuel economy standards); *Hurst*, 2023 WL 4760442, at *4 ("[r]equiring Defendant to provide different fuel economy or range estimates on the window sticker based on what Plaintiff considers real-world conditions in New Jersey would defeat th[e] Congressional intent to establish uniform testing and labeling standards nationwide.").

Plaintiffs contend that *Hurst* "does not bear on the causes of action at issue here" because it "was analyzed under New Jersey state law breach of warranty and misrepresentation claims." (Opp'n 11.)  Plaintiffs fail to acknowlede, however, that *Hurst* also addressed a statutory consumer protection claim, like here.  *Hurst*, 2023 WL 4760442, at *2 (asserting New Jersey Consumer Fraud

1 Act claim). The preemption analyses of driving range claims under California state law and New

2 Jersey state law do not differ.

3 The *Porter* and *Van Diest* Plaintiffs also argue that Tesla should have disclosed that the

4 EPA-mandated range is based on a fully-charged vehicle. (*Porter* Br. 3.) But requiring Tesla to

5 advertise that self-evident information would impose obligations on Tesla that federal law does not

6 impose on other manufacturers. This is precisely what Congress sought to prevent by establishing

7 a comprehensive scheme for consumers to compare vehicles across manufacturers based upon

8 driving range information. (Mot. 11–12.) In addition, Plaintiffs concede that any purported

9 misunderstanding over this issue would have been avoided if Tesla had disclosed that "[a]ctual

10 results will vary for many reasons including driving conditions." (*Porter* Br. 4.) Yet, according to

11 Plaintiffs themselves, Tesla disclosed that very fact. (Mot. 5, 21; *Porter* Am. Compl. ¶¶ 106, 113.)

12 Both controlling Supreme Court and Ninth Circuit precedent hold that where, as here,

13 Plaintiffs' claims encroach upon a federal "comprehensive scheme" to enforce "statutory

14 objectives," they are impliedly preempted. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341,

15 349 (2001); *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1202 (9th Cir. 2002). Plaintiffs

16 cannot escape this rule. Plaintiffs contend that *Buckman* and *Nathan Kimmel* do not apply because

17 they "involved false statements made directly to the agency." (Opp'n 11.) That, however, is

18 precisely what the *Porter* and *Van Diest* Plaintiffs allege. They argue that Tesla's conduct is part

19 of a "sophisticated effort[] to deceive the EPA." (*Porter* Br. 5.) As a result, all of Plaintiffs' claims

20 are preempted as a matter of law.

21 **III.   PLAINTIFFS' OPPOSITION CONFIRMS THAT CABANILLAS & ASSOCIATES,**

22 **P.C. FAILS TO MAKE A PRIMA FACIE SHOWING OF PERSONAL**

23 **JURISDICTION.**

24 This Court lacks personal jurisdiction over the claim asserted by Cabanillas & Associates,

25 P.C. ("C&A"), a New York law firm, against Tesla, a Delaware corporation with its principal place

26 of business in Texas. (Mot. 12–14.) The Opposition ignores controlling jurisdicitonal law.

27 As to general personal jurisdiction, Plaintiff C&A does not dispute that Tesla is incorporated

28 in Delaware and has its principal place of business in Texas. (Mot. 13; Opp'n 25.) Nevertheless,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

the law firm contends that "Tesla has substantial, continuous, and systematic contact with [California] and conducts 'substantial' business in California by maintaining its Engineering headquarters in California." (Opp'n 24.)  This is legally insufficient.  The Supreme Court in *Daimler AG v. Bauman* made clear that allegations of "substantial, continuous, and systematic course of business" do *not* confer general personal jurisdiction.  *See Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014).  This Court also has dismissed claims with similar allegations for lack of personal jurisdiction, explaining that, like here, the plaintiffs "rely on pre-*Daimler* cases applying the less stringent 'substantial, continuous, and systematic course of business' standard, which the *Daimler* court held was 'unacceptably grasping.'"  *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 980 (N.D. Cal. 2016) (quoting *Daimler*, 134 S.Ct. at 761) (Gonzalez Rogers, J.).  Plaintiff's jurisdictional theory here is equally "grasping."

Plaintiff C&A does not argue that this is an "'exceptional case' where 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.'"  *Corcoran*, 169 F. Supp. 3d at 978 (quoting *Daimler*, 134 S.Ct. at 761, n.19).  It is not.  General personal jurisdiction is lacking even where a foreign defendant operates hubs or offices in the forum state.  *See, e.g.*, *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 799 (N.D. Cal. 2020) ("that Defendant conducts substantial business in California through two 'hub airports' located in the state" does not confer general personal jurisdiction); *Santana v. Amazon.com, Inc.*, No. CV 19-01949-AB (SSX), 2019 WL 13295793, at *4 (C.D. Cal. Nov. 5, 2019) (allegations that Amazon has "more employees in California than in Washington" and has "invested more than $19 billion in California to build its business infrastructure" insufficient to confer general personal jurisdiction); *Friedman v. PopSugar, Inc.*, No. 218CV05888CASMAAX, 2018 WL 6016963, at *6 (C.D. Cal. Oct. 29, 2018) ("Although PopSugar has an office in the district, this does not support the theory that PopSugar is 'essentially at home' in the Central District."); *Ayunan v. Caktiong*, No. CV 15-9355-RSWL-PLAX, 2016 WL 738288, at *6 (C.D. Cal. Feb. 23, 2016) (operating office and employing manager in California insufficient to confer general personal jurisdiction).

As to specific jurisdiction, Plaintiff C&A concedes that the vehicle at issue was not purchased or driven in California and no injury occurred in California.  (Mot. 13–14; Opp'n 25.)  The law firm contends, however, that its claim "arises out of or relates to" Tesla's contacts with California because Tesla's programming of software for the real-time range display "*ostensibly . . . emanate[s] from California.*"  (Opp'n 25 (emphasis added).)  But "ostensibly" means "apparently, but not necessarily or really."[7]  There are no facts pled to show that any software programming for the estimated range on Plaintiff's vehicle's dashboard took place in California.   Counsel's speculative argument is no substitute for well-pled allegations.  *See Wood v. Motorola Mobility, Inc.*, No. C-11-04409-YGR, 2012 WL 892166, at *7 (N.D. Cal. Mar. 14, 2012) (Gonzalez Rogers, J.) (dismissing claims where "[a]lthough the Complaint does not allege that any of the alleged misconduct . . . occurred in California, in their opposition [to motion to dismiss], Plaintiffs speculate that 'the challenged conduct could have emanated from California'").

In short, Plaintiff C&A has failed to meet its burden of demonstrating that this Court has general or personal jurisdiction over Tesla with respect to its claim.  As a result, that claim must be dismissed.

## IV.   THE *CORONA* PLAINTIFFS DO NOT SEEK PUBLIC INJUNCTIVE RELIEF AND CANNOT ASSERT CLAIMS "ON BEHALF OF THE PUBLIC."

Tesla has demonstrated that Plaintiffs' claim for public injunctive relief should be dismissed because:  (1) *Corona* Plaintiffs do not seek public injunctive relief as a matter of controlling law; (2) no private Plaintiff can seek relief "on behalf of" the public; and (3) public injunctive relief is not available under GBL Section 349.  (Mot. 14–16.)  Plaintiffs' Opposition confirms these failures.

### A.   *Corona* Plaintiffs Do Not Seek Public Injunctive Relief.

Plaintiffs' Opposition makes clear that the relief the *Corona* Plaintiffs seek is limited to an "injunction compelling Defendant to fix the mileage readings displayed by Tesla's dashboard range meters."  (Opp'n 20; *see id.* at 9 ("Plaintiffs do not allege that disclosing EPA mileage estimates is *itself* deceptive, but that Tesla designed software that manipulated its in-vehicle information

---

[7]    Ostensibly,    Oxford    English    Dictionary    Online, www.oed.com/dictionary/ostensibly_adv?tab=meaning_and_use#33020954.

1   reader").)  Plaintiffs do not dispute that only Tesla drivers, not the general public, view those

2   dashboards.  (Mot. 15; Opp'n 19–23.)  As such, the requested relief is not public injunctive relief

3   because, at most, it would have the potential to affect Tesla customers—it would not "*primarily*

4   benefit the general public as a more diffuse whole." *Hodges*, 21 F.4th at 549 (emphasis in original).

5          Plaintiffs raise a strawman that "there is no case law that holds that *all* members of the

6   public must be potentially affected for the injunction to be public."  (Opp'n 19 (emphasis added by

7   Plaintiffs).)  However, ample case law holds that an injunction that would primarily benefit a

8   defendant's customers is ***not*** a public injunction.  (*See* Mot. 14–15.; *see also M Resorts, Ltd. v. New*

9   *England Life Ins. Co.*, 2019 WL 6840396, at *5 (S.D. Cal. Dec. 16, 2019) (dismissing request for

10   public injunctive relief "the class of people who stand to benefit from [plaintiff's] requested relief

11   is not the general public but rather is limited to a class of people who are well-defined and have a

12   similar interest: people who have or had variable life insurance policies with Defendants.").

13          Plaintiffs claim that these cases are distinguishable because "most" are "decisions on

14   motions to compel arbitration" in class actions.  (Opp'n 21.)  The analysis as to whether injunctive

15   relief constitutes a "public injunction," however, is no different in the context of a motion to

16   dismiss, and Plaintiffs offer no rationale otherwise.  Moreover, Plaintiffs' criticism is self-defeating,

17   given that the few (distinguishable) cases they cite analyzed a request for public injunctive relief in

18   the context of a motion to compel arbitration in a class action.  *See Brown v. Madison Reed, Inc.*,

19   No. 21-CV-01233-WHO, 2021 WL 3861457, at *6 (N.D. Cal. Aug. 30, 2021) ("challenge to the

20   validity of the arbitration agreement" in class action); *Greenley v. Avis Budget Grp. Inc.*, No. 19-

21   CV-00421-GPC-AHG, 2020 WL 1493618, at *7 (S.D. Cal. Mar. 27, 2020) (same); *McGill v.*

22   *Citibank, N.A.*, 393 P.3d 85, 94 (2017) (same).

23          Plaintiffs' other attempts to distinguish the cases cited in Tesla's Motion are equally

24   unavailing.  Plaintiffs contend that "it appears" that "in some" of those cases monetary relief was

25   "the core" of the action.  (Opp'n 21.)  This issue, however, has no impact on whether the requested

26   injunctions were, in fact, properly pled requests for public injunctions—which is the issue here.

27   The requested relief in those cases was not public injunctive relief because it would primarily

28   benefit customers of the defendants—not the general public.  *See, e.g.*, *Woody v. Coinbase Glob.*,

*Inc.*, 2023 WL 6882750, at *4 (N.D. Cal. Oct. 17, 2023) ("Because these requests 'stand to benefit only' [defendant's] customers 'similarly situated to the plaintiff[s],' and 'not the general public as a more diffuse whole,' they are not requests for public injunctive relief."); *Stock v. Wells Fargo*, 2023 WL 5505839, at *8 (C.D. Cal. July 13, 2023) (same); *Torres v. Veros Credit LLC*, 2023 WL 5505887, at *5 (C.D. Cal. July 13, 2023) (same); *Fernandez v. Bridgecrest Credit Co., LLC.*, 2022 WL 898593, at *1 (9th Cir. Mar. 28, 2022) (same); *Nezri v. PayPal, Inc.*, 606 F. Supp. 3d 985, 992 (C.D. Cal. 2022) (same).  So, too, here.

Plaintiffs bizarrely argue that *Hodges* is inapplicable because the complaint there "was clearly brought for the benefit of cable subscribers, and not the general public," whereas the *Corona* Amended Complaint is "aimed at the general public . . . because the dashboard range meters will be corrected by adjusting Tesla's software, hardware, and/or firmware, which will apply to all Tesla's vehicles in one stroke."  (Opp'n 21–22.)  Plaintiffs' Opposition confirms Tesla's very argument.  Just as the general public is broader than cable subscribers, it is also broader than Tesla vehicle owners.  *Hodges* is controlling.  And it requires dismissal of Plaintiffs' claims for public injunctive relief.[8]

Plaintiffs further argue that in *Woody*, the court held that the plaintiffs did not seek public injunctive relief, whereas here "Plaintiffs specifically seek public injunctive relief under the UCL." (Opp'n 22.)  That merely begs the question.  Just like the operative *Corona* complaint here, the operative complaint in *Woody* purported to "seek public injunctive relief under the UCL."  Am. Complaint ¶ 159, *Woody v. Coinbase Glob., Inc.*, No. 23-cv-00190-JD (ECF No. 5), attached hereto as Exhibit A.  The *Woody* Court held that the plaintiffs' requested injunction was not a public injunction because it "stand[s] to benefit only [defendant's] customers 'similarly situated to the plaintiff[s],' and 'not the general public as a more diffuse whole."  *Woody*, 2023 WL 6882750, at *4.  The same rule applies here.

---

[8]     Plaintiffs' attempts to distinguish *Nezri* and *Fernandez* suffer from the same conceptual error.  (Opp'n 23 (arguing that in *Nezri* the injunctive relief "appears to benefit only the plaintiff and other PayPay's [sic] users, and not the general public" and "nothing in the [Fernandez] opinion suggests that the plaintiffs brought this action to seek an injunction to benefit the public as a whole."))  Again, like in *Nezri* and *Fernandez*, the injunction Plaintiffs seek here would impact only Tesla customers.  That is not a public injunction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

1    The few cases cited by Plaintiffs also recognize that "[t]o constitute public injunctive relief,

2    the requested relief must 'by and large' benefit the general public."  *Brown*, 2021 WL 3861457, at

3    *6; *Greenley*, 2020 WL 1493618, at *7 (public injunctive "relief 'by and large benefits the general

4    public" and "benefits the plaintiff, if at all, only incidentally and/or as a member of the general

5    public" (quoting *McGill*, 2 Cal. 5th at 955)).  In *McGill*, the Court explained that "relief that has

6    the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to ***a***

7    ***group of individuals similarly situated*** to the plaintiff—does ***not*** constitute public injunctive

8    relief."  *McGill*, 2 Cal. 5th at 956 (emphasis added).  Plaintiffs' Opposition ignores that the *Corona*

9    Plaintiffs explicitly brought their claims "on behalf of" only "themselves and other ***similarly***

10   ***situated members of the general public*** who purchased a Tesla vehicle from Defendant in

11   California." (Mot. 15 (citing *Corona* Am. Compl. ¶ 34) (emphasis added)).  Under controlling law,

12   Plaintiffs have not requested public injunctive relief.

13       **B.    Plaintiffs Cannot Seek Relief On Behalf Of The Public.**

14       Plaintiffs do not have the authority to bring claims "on behalf of" the general public.  (Mot.

15   16.)  Plaintiffs concede that the California Plaintiffs lack the authority to bring a UCL claim "on

16   behalf of the General Public."  (Opp'n 23 (quoting *Mack v. LLR, Inc.*, 2018 WL 6927860, *6 (C.D.

17   Cal. Aug. 15, 2018)).)  Yet that is precisely what the California Plaintiffs purport to do.  (Am.

18   Compl. ¶ 34 ("Plaintiffs Corona and Jackson Newman have assumed the responsibility of

19   enforcement of the laws and public policies specified here by suing on behalf of themselves and

20   other similarly situated members of the general public . . . .")).  The analysis need go no further—

21   Plaintiffs' claims on behalf of the general public must be dismissed.

22       Plaintiffs wrongly argue that the cases "Tesla relies on" dismissing UCL claims brought on

23   behalf of the general public do not apply because they are "unreported district court cases

24   predating" *McGill*.  (Opp'n 23 n.4.)  But two of the four cases were issued ***after*** the *McGill* decision

25   (in 2017), one was reported, and all are persuasive.  *See Ballard v. Bhang Corp.*, 2020 WL 6018939,

26   at *6 (C.D. Cal. Sept. 25, ***2020***); *Mack*, 2018 WL 6927860, at *6 (C.D. Cal. Aug. 15, ***2018***);

27   *Friedman v. 24 Hour Fitness USA, Inc.*, ***580 F. Supp. 2d 985, 994*** (C.D. Cal. 2008).  What's more,

28   the *Mack* decision explicitly relies on *McGill* in striking UCL claims brought on behalf of the

general public.  *Mack*, 2018 WL 6927860, at *6.  To remove any doubt, this Court too has recognized that "a request for [public injunctive] relief does not constitute the pursuit of representative claims or relief ***on behalf of others***."  *Farr v. Acima Credit LLC*, No. 4:20-CV-8619-YGR, 2021 WL 5161923, at *2 n.5 (N.D. Cal. Nov. 5, 2021) (emphasis added).  Plaintiffs' requests for public injunctive relief should be dismissed.

### C.    Public Injunctive Relieve Is Unavailable Under GBL Section 349.

Lastly, Plaintiffs do not dispute that public injunctive relief is ***not*** available under GBL Section 349.  (Mot. 16; Opp'n 23.)  As a result, the New York law firm's claim for public injunctive relief under this statute must be dismissed with prejudice.

### V.    PLAINTIFFS' CLAIMS ARE PRECLUDED BY SAFE-HARBOR DOCTRINES.

Plaintiffs do not dispute that the UCL and GBL Section 349(d) safe harbors preclude claims based upon EPA-estimated driving ranges.  (Mot. 17; Opp'n 12.)  They argue their theory that Tesla "program[med] software to misrepresent the mileage on the dashboard" avoids these safe harbors.  (Opp'n 13.)  Not so.  Plaintiffs have alleged that the mileage displayed on the dashboard reflects the EPA-approved estimates.  (*Corona* Am. Compl. ¶ 13.)  Because federal law permits Tesla to disclose the EPA-mandated ranges, the safe harbors bar this theory, too.  (Mot. 17.)

Plaintiffs contend that *Green v. SweetWorks Confections, LLC*, 2019 WL 3958442 (S.D.N.Y. Aug. 21, 2019) and *Morrison v. Barcel USA, LLC*, 2019 WL 95477 (S.D.N.Y. Jan. 2, 2019) are "inapposite" because they involve the application of the safe harbor provision under GBL Section 349(d) to conduct permitted by an FDA regulation that is "clearly not at issue here."  (Opp'n 13.)  Plaintiffs do not explain how that distinction changes the analysis.  Of course, legal principles, such as the application of a safe harbor, may apply across various regulations and conduct.  *See, e.g.*, *Manchanda v. Educ. Credit Mgmt. Corp.*, No. 19 CIV. 5121 (LGS), 2022 WL 137885, at *3 (S.D.N.Y. Jan. 14, 2022) (Section 349 claim barred by Department of Energy regulation), *appeal dismissed*, No. 22-142-CV, 2023 WL 4725734 (2d Cir. Apr. 3, 2023).

As *Green* and *Morrison* make clear, conduct permitted by federal laws and regulations do not give rise to liability under Section 349(d).  That means there is no liability here.  No matter how Plaintiffs may try to describe their claims, they are barred by the safe harbors.

**VI.    THE CALIFORNIA PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE UCL.**

Plaintiffs Corona and Newman cannot satisfy the unlawful, unfair, or fraudulent prong of their UCL claims because:  (1) they do not and cannot allege reliance; (2) they cannot satisfy Rule 9(b); and (3) they have not pled any prong of this claim.  (Mot. 17–23.)  For each of these reasons, their UCL claims must be dismissed.

**A.    Plaintiffs Do Not And Cannot Allege Reliance.**

Plaintiffs do not dispute that to prove their UCL claims, they must allege facts plausibly showing that they relied on a pre-purchase statement by Tesla in making their purchasing decisions. *See Wood*, 2012 WL 892166, at *6 ("plaintiffs . . . must plead 'actual reliance on the allegedly deceptive or misleading statements").  Plaintiffs do not contend that they relied on the EPA-mandated ranges shown on Tesla's website, since they concede that theory is preempted.  And Plaintiffs cannot plausibly show that they relied on the estimated ranges displayed on their vehicles' dashboard in making their purchasing decision, since any displays were viewed only ***after*** purchase. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing UCL claim because plaintiff failed to allege "when she was exposed to" representation that was "material to her decision to purchase" product).

Plaintiffs argue that "they relied on the accuracy of Tesla's mileage range display instrument as a key factor in their purchasing decisions."  (Opp'n 14–15.)  But Plaintiffs cite no ***allegations*** that they actually relied on the range displayed in their vehicles prior to purchase.  Nor do they even explain how that would be possible, much less plausible.  They could ***not*** have relied upon any range information displayed on their vehicles' dashboards at the time of purchase.

In short, Plaintiffs cannot show reliance because Plaintiffs would not have seen the in-vehicle range displayed until ***after*** they purchased their vehicles.  *Wood*, 2012 WL 892166, at *6 (dismissing UCL claim for failure to allege actual reliance on the allegedly deceptive or misleading statements); *Chakraborty v. Visa Inc.*, 2022 WL 19692039, at *3 (N.D. Cal. Aug. 19, 2022) (Gonzalez Rogers, J.) (same); *Gentry*, 2017 WL 354251, at *7 (dismissing consumer protection claim based on inaccurate "on-board mileage calculator" for lack of reliance).

1

### B.     Plaintiffs Do Not And Cannot Satisfy Rule 9(b).

2        Plaintiffs do not dispute that their UCL claims each sound in fraud.  (Mot. 17; Opp'n 13.)[9]

3   Plaintiffs contend, however, that they need not satisfy Rule 9(b)'s heightened pleading requirement,

4   even as to their "claims that Tesla's practices were likely to deceive." (Opp'n 13.)  That is incorrect.

5   Plaintiffs ignore this Court's decision applying Rule 9(b) to any UCL claims that sound in fraud,

6   regardless of which prong they are brought under.  *Pirozzi*, 913 F. Supp. 2d at 850 (UCL claims

7   based on theory that "Apple is misrepresenting the characteristics of its Apple Devices and Apps

8   in the App Store" sound in fraud and are subject to the heightened pleading requirements of Rule

9   9(b)).

10       Plaintiffs cite cases that declined to apply Rule 9(b) to claims involving allegedly **non-**

11  **fraudulent** conduct.  (Opp'n 13.)[10]  Plaintiffs, however, rest their claims on allegedly fraudulent

12  conduct to deceive the EPA and customers.  The only allegation they cite—"Tesla's conduct [is]

13  'likely' to mislead the public" (Opp'n 13 (citing *Corona* Am. Compl. ¶ 36))—confirms that their

14  claims sound in fraud.  *See, e.g.*, *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d

15  1009, 1017 (N.D. Cal. 2012) (applying Rule 9(b) to claims that defendant "made numerous

16  misleading and false representations"); *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046,

17  1079 (S.D. Cal. 2019) (same as to allegation that defendant used "misleading phrases to market and

18  sell" product).

19       Here, Plaintiffs do not plead any of the details required by Rule 9(b).  They do not plead

20  what allegedly false statements they relied upon in purchasing their vehicles, who said them, when,

21  or why they were somehow defrauded or otherwise misled into making their purchases.  Plaintiffs,

22

23

---

24  [9]     *Corona* Am. Compl. ¶¶ 1 (alleging practice of "misrepresenting to consumers"), 17
(alleging "fraudulent mileage projections").

25  [10]    *See McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 961 (N.D.
Cal. 2012) (applying Rule 9(b) to claim "based in fraud" but not claim based on "non-fraudulent

26  conduct"); *Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, No. CV 09-5457 PSG (CTX), 2014 WL
12558848, at *11 (C.D. Cal. May 30, 2014) (Plaintiffs do not suggest that defendant intended to

27  deceive plaintiffs or made representations as part of a fraudulent scheme).  Here, *Corona* Plaintiffs
allege that Tesla misrepresented the driving range for its vehicles and "orchestrated a practice to

28  quash nationwide consumer complaints from this defect."  (*Corona* Am. Compl. ¶ 2.)

1    in fact, offer virtually no facts about their purchases whatsoever.  Because they do not and cannot

2    satisfy Rule 9(b), their claims must be dismissed.

3           **C.     Plaintiffs Do Not And Cannot Satisfy Any Prong Of A UCL Claim.**

4                  **1.     Plaintiffs Fail To Allege An "Unlawful" Act.**

5           Plaintiffs do not dispute that their UCL claim for unlawful conduct fails unless they allege

6    facts showing that Tesla breached an implied warranty of merchantability.  (Mot. 18; Opp'n 15.)

7    They contend without any basis whatsoever that "Tesla has given an implied warranty that its

8    vehicles are fit to be used *as represented by its onboard performance instruments*."  (Opp'n 16

9    (emphasis added).)  That makes no sense.  A vehicle that is "fit for driving" is merchantable.

10   *Barakezyan v. BMW of N. Am., LLC*, 2016 WL 11505592, at *7 (C.D. Cal. May 19, 2016).  Indeed,

11   "in the case of automobiles, the implied warranty of merchantability can be breached only if the

12   vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of

13   providing transportation." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296

14   (1995); *see also Birdsong v. Apple, Inc.,* 590 F.3d 955, 958 (9th Cir. 2009) (under California law,

15   breach of implied warranty only "occurs if the product lacks 'even the most basic degree of fitness

16   for ordinary use'" (internal citations omitted)).

17          Plaintiffs do not allege that they cannot drive their Tesla vehicles, their vehicles have a

18   defect, or they have experienced any safety issue.  *See, e.g.*, *Troup v. Toyota Motor Corp*., 545 F.

19   App'x 668, 669 (9th Cir. 2013) (applying rule to affirm dismissal of implied warranty claim);

20   *Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, at *5, 9 (N.D. Cal. Aug.

21   20, 2019) ("defect must drastically undermine a device's operation to render the device

22   unmerchantable" and rejecting claim because no showing that product "lacked even a basic degree

23   of fitness for ordinary use"), *aff'd*, 847 F. App'x 512 (9th Cir. 2021).  The *Corona* Plaintiffs do not

24   even bring a breach of warranty claim at all.  The reason is clear – they cannot.

25          Plaintiffs cite cases that offer them no support.  (Opp'n 16–17.)  In *Pulkrabek v. Toyota*

26   *Motor Sales, U.S.A., Inc.*, the plaintiffs alleged a safety defect associated with the shape of certain

27   vehicles' fuel tanks.  No. 220CV00036JRGRSP, 2021 WL 1227934, at *1 (E.D. Tex. Mar. 16,

28   2021), *report and recommendation adopted*, No. 220CV00036JRGRSP, 2021 WL 1214476 (E.D.

1   Tex. Mar. 30, 2021).  The other case Plaintiffs rely on also involved an alleged "safety risk."  *Urb.*

2   *v. Tesla, Inc.*, No. 22-CV-07703-PCP, 2023 WL 6796021, at *7 (N.D. Cal. Oct. 13, 2023).  Here,

3   Plaintiffs allege no safety defect. These cases have no relevance.[11]

4          Instead of mounting any real argument that they have alleged a breach of implied warranty,

5   Plaintiffs try unsuccessfully to distinguish Tesla's cited cases—with no regard for the propositions

6   for which Tesla cited them.  They contend that *Power Quality & Electrical Systems, Inc. v. BP*

7   *West Coast Products LLC*, 2016 WL 6524408 (N.D. Cal. Nov. 3, 2016) (Gonzalez Rogers, J.) is

8   distinguishable because the plaintiffs there did "not allege a theory under the unlawful prong of the

9   UCL."  (Opp'n 15.)  That is flat-out wrong.  Under the section heading "***Unlawful Prong***," this

10  Court held that the plaintiff's "claim under the unlawful prong of Section 17200 fails."  *Power*

11  *Quality & Electrical Systems, Inc.*, 2016 WL 6524408 at *7 (emphasis in original).

12         Plaintiffs reference *Acedo v. DMAX, Ltd.*, 2015 WL 12696176 (C.D. Cal. Nov. 13, 2015)

13  and *In re Plum Baby Food Litig.*, 2022 WL 16640802 (N.D. Cal. Jan. 12, 2022) (Gonzalez Rogers,

14  J.), but they do not challenge Tesla's reliance on those cases.  (Opp'n 16; Mot. 19.)  In *Acedo*, the

15  implied warranty claim was dismissed because the court concluded that a vehicle with an alleged

16  defect that causes reduced fuel economy is fit for its intended use.  *Acedo*, 2015 WL 12696176, at

17  *24–25.  And in *In re Plum Baby Food Litig.*, this Court dismissed an implied warranty claim

18  because the plaintiff failed to adequately allege facts showing that the product was not fit for the

19  ordinary purpose for which the goods are used.  2022 WL 16640802, at *2.  Like those two cases,

20  Plaintiffs here have failed to allege that their vehicles are unfit for their intended use.  Because

21  Plaintiffs cannot state a claim based on a breach of implied warranty, the derivative "unlawful"

22  UCL claim fails as well.

23         Lastly, Tesla cited *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal.

24  2022), for the proposition that a UCL claim fails when the predicate claim fails.  (Mot. 18.)

25  Plaintiffs' attempt to distinguish *Hammerling* is unintelligible.  (Opp'n 15 ("plaintiffs' claims . . .

26  under the unfair prong" were dismissed "only after" the claims under the "unlawful and fraudulent

27  ───────────────────────

28  [11]     The final case Plaintiffs rely on, *Kuehl v. Gen. Motors LLC*, No. 2:23-CV-06980-SB-SK, 2023 WL 8353784 (C.D. Cal. Nov. 17, 2023), did not involve any warranty claims and is irrelevant as to whether Plaintiffs have alleged a breach of implied warranty of merchantability.

prongs" were dismissed "and the allegations were premised on the same conduct").)  In any event, the UCL claim was dismissed because the plaintiffs failed to state an underlying claim, *Hammerling*, 615 F. Supp. at 1094, just as Plaintiffs fail to do here.[12]

### 2. Plaintiffs Fail To Allege An "Unfair" Act.

Plaintiffs' Opposition does not even attempt to argue that Plaintiffs have met either of the two standards for unfair competition under the UCL.  (Opp'n 13–14 (recognizing the "two standards for determining what is unfair competition under the UCL").)  Plaintiffs' entire argument regarding the "unfairness" prong consists of one conclusory sentence:  "Plaintiffs' claims that Tesla altered dashboard readings and quashed consumer complaints constitute 'unfair' conduct which harmed consumers within the meaning of the UCL."  (Opp'n 14.)  That is insufficient.

Plaintiffs do not identify any "allegations that the challenged conduct violates a 'public policy' that is 'tethered' to a specific constitutional, statutory, or regulatory provision."  *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1050 (N.D. Cal. 2020).  Nor do they "balance[] the harm to the consumer against the utility of the defendant's practice" and show that the alleged misconduct is "substantially injurious, immoral, or unethical."  *Id.* (quoting *Lozano v. AT&T Wireless Svs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007)); *Hodsdon*, 891 F.3d at 867.  In the only case cited by Plaintiffs, this Court dismissed a UCL claim under the unfairness prong because the complaint lacked "factual allegations[] to support th[e] conclusory statement" that the defendant engaged in unfair practices.  *Doe*, 435 F. Supp. 3d at 1050.  This Court should do the same here.

### 3. Plaintiffs Fail To Allege Any "Fraudulent" Act.

***Plaintiffs' Affirmative Misrepresentation Theory Fails*.**  Plaintiffs' Opposition does not identify any misleading pre-purchase statement that any Plaintiff was exposed to or relied upon when purchasing his or her Tesla vehicle.  *Corona* Plaintiffs contend that they "include details about the vehicles they purchased, and allege how they were harmed by the significant drop and

---

[12]     Plaintiffs seem to attempt to distinguish *Netlist, Inc. v. Diablo Techs., Inc.*, 2015 WL 1887261 (N.D. Cal. Apr. 24, 2015), *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018), *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012), and *Hall v. SeaWorld Entertainment, Inc.*, 747 F. App'x 449, (9th Cir. 2018)—none of which were cited in Tesla's argument on the unlawful prong.  (Mot. 18–19; Opp'n 16.)  Regardless, Plaintiffs do not explain how any of those cases are distinguishable.

1 false readings on the mileage dashboard." (Opp'n 14 (citing Am. Compl. ¶¶ 2, 8–9, 14, 18).) But

2 the allegations they cite merely identify the approximate date of purchase and the model vehicle

3 and refer generally to the "advertised range of Tesla vehicles."  This is woefully insufficient.

4 Plaintiffs do not identify the details of any particular false statement that any Plaintiff was exposed

5 to, such as who made it, where, or when, as required by Rule 9(b).

6      Likewise, Plaintiffs do not identify any post-purchase representation made by Tesla that the

7 driving range displayed on the dashboard of their vehicles matched the actual driving range.  (*Id.*

8 at 14.)  To the contrary, Plaintiffs allege that the range displayed on the dashboard tracks the EPA-

9 mandated estimates (*Corona* Am. Compl. ¶ 13), and Tesla disclosed to consumers that this was just

10 an estimate.  Exhibit A to Nov. 22, 2023, Decl. of David Schrader, ECF No. 26-1 at 9 of 129.  Tesla

11 made clear that the "actual range depends on many factors, particularly your environment and

12 personal driving habits." *Id.*

13      Plaintiffs also ignore Tesla's other arguments demonstrating that their affirmative

14 misrepresentation theory fails.  (Mot. 21–22; Opp'n 14.)  Plaintiffs cannot show that members of

15 the public "are likely to be deceived" by the range displayed on the dashboard of Tesla vehicles

16 given that Tesla discloses that they are just estimates.  (Mot. 21.)  And Plaintiffs do not address the

17 many cases holding that "there is nothing false or misleading" about disclosing EPA fuel economy

18 estimates.  *Paduano*, 88 Cal. Rptr. 3d at 105; *see also Gray v. Toyota Motor Sales, U.S.A.*, 2012

19 WL 313703, at *6 (C.D. Cal. Jan. 23, 2012) (dismissing CLRA claim that "rel[ies] solely on

20 advertisements that merely repeat the approved EPA mileage estimates"), *aff'd sub nom. Gray v.*

21 *Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608 (9th Cir. 2014); *Brett v. Toyota Motor Sales,*

22 *U.S.A., Inc.*, No. 608CV-1168-ORL-28GJK, 2008 WL 4329876, at *7 (M.D. Fla. Sept. 15, 2008)

23 ("As a matter of law, Defendant's practice of advertising the EPA's estimates and identifying the

24 EPA as the source of those estimates is not unfair or deceptive.").  Plaintiffs' affirmative

25 misrepresentation theory fails as a matter of law.

26      ***Plaintiffs' Omission Theory Fails***.  The *Corona* Plaintiffs appear to withdraw any omission

27 theory, as the Opposition does not identify any information they contend Tesla should have

28 disclosed to them.  (Opp'n 13–15.)  In addition, these Plaintiffs do not address Tesla's argument

(Mot. 23) that they have failed to allege a duty to disclose, which arises in the context of selling a product only "when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors." *Hammerling*, 615 F. Supp. 3d at 1085 (collecting cases); *Hodsdon*, 891 F.3d at 865 ("we hold that in this pure omissions case concerning no physical product defect relating to the central function of the chocolate and no safety defect, Plaintiff has not sufficiently pleaded that Mars had a duty to disclose on its labels the labor issues in its supply chain"). This failure to address Tesla's dispositive argument requires dismissal.

The *Porter* and *Van Diest* Plaintiffs argue that they have adequately alleged a duty to disclose because range capabilities are central to a vehicle's function. (*Porter* Br. 5.)  But they ignore controlling case law holding that the types of alleged defects that affect the central function of a product are those that "render[] those products incapable of use." *Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512, 514 n.1 (9th Cir. 2021) (quoting *Hodsdon*, 891 F.3d. at 864).  They do not allege or argue that the supposedly inaccurate range estimates displayed on the dashboard of Tesla vehicles render their vehicles incapable of use.  Nor do they identify any facts showing that the estimated range displayed on the dashboard impairs their vehicles' ability to provide safe transportation. *See Garlough v. FCA US LLC*, No. 2:20-CV-01879-JAM-AC, 2021 WL 4033177, at *5 (E.D. Cal. Sept. 3, 2021) (dismissing omission claim because plaintiff does not allege that vehicle defect "renders the Dodge Demon incapable of use or that it causes an unreasonable safety hazard").  The *Porter* and *Van Diest* Plaintiffs, in fact, do not allege any facts showing any problems with their Tesla vehicles.  Their vehicles work as advertised.  As such, their omission theory fails at the start.

The *Porter* and *Van Diest* Plaintiffs also argue in passing they have satisfied "multiple *LiMandri* factors," yet they ignore the law and Tesla's arguments.  (Mot. 23; *Porter* Br. 5.)  They contend that Tesla has "exclusive knowledge of the vehicles' true range capabilities," which Tesla "actively concealed . . . while Tesla discussed the achievable range." (*Porter* Br. 5.)  But Plaintiffs have conceded that this theory based on advertising the EPA-mandated range is preempted. Moreover, Plaintiffs do not and cannot explain how Tesla has exclusive knowledge of this issue,

given that the EPA cautions consumers that its fuel economy estimates "may not accurately predict the average" range and Tesla's website discloses that "[y]our driving behaviors and environmental conditions can impact your vehicle's efficiency, and therefore its range." *Your Mileage Will Vary,* EPA, https://www.fueleconomy.gov/feg/why_differ.shtml.; Exhibit A to Nov. 22, 2023, Decl. of David Schrader, ECF No. 26-1 at 9 of 129.  This theory fails, too.

To the extent any Plaintiff's UCL claim is predicated upon a failure to disclose theory, it is preempted and fails as a matter of law.

## VII.   PLAINTIFF CABANILLAS & ASSOCIATES FAILS TO STATE A CLAIM.

The claim brought by the New York law firm, C&A, fails for multiple reasons:  (1) it did not purchase the Tesla vehicle at issue, so it lacks standing; (2) it fails to allege any false or misleading advertising or causation; and (3) its claim is time barred.  (Mot. 23–25.)

### A.   C&A Is Not A Proper Plaintiff Because It Did Not Purchase The Vehicle At Issue.

The law firm concedes that it did not purchase a Tesla vehicle.  (Opp'n 17 n.2.)  As a result, it not a proper plaintiff and lacks standing to raise its claim.  The Opposition ignores the many cases dismissing GBL Section 349 claims for lack of standing when brought by plaintiffs who did not purchase the product as issue.  (Mot. 23–24 n.15.)  The claim must be dismissed for this reason alone.  C&A's contention that Mr. Cabanillas "purchased the Tesla on behalf of his law firm" does nothing to change the analysis.  (Opp'n 17 n.2.)  For one, it is not alleged.  And there is no exception to the threshold standing requirement where a non-party purchases a product on a plaintiff's "behalf."

Plaintiff C&A's other argument fares no better.  The contention that "[l]egal professionals are merely a subclass of consumers" (*id.*) is irrelevant to the basic requirement that a plaintiff must be the one who purchases the product at issue.  The Opposition cherrypicked that quotation from a decision analyzing whether an allegedly deceptive act was "consumer oriented"—a separate requirement.  *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 178, 171 N.E.3d 1192, *reargument denied*, 37 N.Y.3d 1020, 175 N.E.3d 909 (2021).  Moreover, in *Himmelstein*, the plaintiff law firm actually purchased the product at

issue, *id.* at *173—here, it undisputedly did not.  As such, the GBL claim must be dismissed.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) (finding that the plaintiff "clearly lack[ed] standing to assert claims on its behalf" for product it did not purchase); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013) ("plaintiffs lack Article III standing to assert claims arising out of products that they themselves did not purchase").

**B.**      **C&A Does Not Allege Any False Statements Or Omissions That It Received.**

Plaintiff C&A also fails to identify a materially misleading statement made by Tesla, as required to state a GBL Section 349 claim.  It concedes that Tesla's disclosure of the EPA-estimated range is not misleading.  (Opp'n 17.)  C&A claims instead that "Tesla[] fail[ed] to accurately represent and display the mileage range projections."  (*Id.* at 18.)  But even if this were true (and it is not), the law firm entirely ignores the requirement that a plaintiff must have seen the allegedly misleading statement before purchasing the product and concedes that it did not.  (Mot. 24; Opp'n 18–19).  As a result, C&A cannot demonstrate causation.  *See also Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased.")

Plaintiff C&A cites *Wai Chu v. Samsung Electronics America, Inc.*, No. 1:18-CV-11742-GHW, 2020 WL 1330662 (S.D.N.Y. Mar. 23, 2020), but that case supports dismissal as well. There, the plaintiffs identified allegedly misleading "advertisements both online and in-store" that they "saw" before or at the time of purchase.  *Id.* at *6.  C&A does not.

Plaintiff C&A also argues that Tesla failed to disclose to consumers that the real-time dashboard range "projections drop at a rate faster than the miles actually driven."  (Opp'n 18.)  But, as the cases cited by C&A recognize, an omission claim against a seller under Section 349 is actionable only if "the business alone possess" the "material" information.  *Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327 NGG VVP, 2015 WL 5686507, at *12 (E.D.N.Y. Sept. 25, 2015); *see also Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011) ("when a defendant exclusively possesses information that a reasonable consumer would want to know and could not

discover without difficulty, failure to disclose can constitute a deceptive or misleading practice"). Indeed, the cases cited in the Opposition involved alleged safety-related defects about which the defendants supposedly possessed exclusive knowledge. *See Woods*, 807 F. Supp. 2d at 117 (alleging defect in "igniter mechanims" that caused product "to explode and catch fire"); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 548 (S.D.N.Y. 2016) (vehicles "present a safety hazard and are unreasonably dangerous to consumers because of the danger of catastrophic electrical system failure or fire hazards"); *Chiarelli*, 2015 WL 5686507, at *2 ("failure of the Timing Chain Tensioning System also risks occupant safety").

Here, there is no safety issue, no latent defect, and no exclusive knowledge by Tesla.  As discussed above, both Tesla's website and the EPA disclosed to consumers that the EPA-estimated ranges are just that—estimates.  Critically, Plaintiff C&A does not identify any facts showing that any alleged omission impacted the purchase of the Tesla vehicle at issue; indeed, it alleges no facts about the purchase of that vehicle whatsoever, presumably because it did not make that purchase. This omission theory fails, too.

**C.**      **The GBL Section 349 Claim Is Time Barred.**

Plaintiff C&A concedes that it filed this lawsuit outside the three-year statute of limitations period (Mot. 24–25), but tries to invoke tolling under the continuing violation doctrine because, it contends, the estimated range displayed in the vehicle remains inaccurate.  That doctrine is inapplicable.

Under New York law, "[t]he continuing violation doctrine may only be predicated on continuing unlawful acts by the tortfeasor and not on the continuing effects of earlier unlawful conduct."  *Baldeo v. Airbnb, Inc.*, No. 20CV7771PGGVF, 2023 WL 7689652, at *5 (S.D.N.Y. Sept. 29, 2023) (quoting *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 191 (E.D.N.Y. 2014)); *see also DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh*, No. 15 CIV. 2259 (PGG), 2021 WL 3141672, at *8 (S.D.N.Y. July 26, 2021) ("Plaintiffs contend that they suffered harm as a result of false and misleading advertising that induced them to purchase the insurance policies in the first place.  The monthly premiums are merely 'continuing effects of earlier unlawful conduct.'").  The law firm identifies no facts to support tolling.  Nor could it.  It does not allege

1  (because it would be nonsensical) that each time someone uses the vehicle the law firm is somehow

2  tricked into believing that the estimated range displayed on the dashboard is something other than

3  an estimate.  Any supposed harm is a "continuing effect" of Tesla programming the range displayed

4  on the dashboard based upon the EPA-approved estimates—not continuing unlawful acts.

5       Because it is apparent from the face of the *Corona* Amended Complaint that the law firm's

6  claim is time-barred, it should be dismissed.

7  **VIII.   <u>CONCLUSION</u>**

8       The Court should dismiss the *Corona* Plaintiffs' claims without leave to amend for the

9  reasons stated in the Motion and herein.

10

11  Dated: January 16, 2024          MORGAN, LEWIS & BOCKIUS LLP
                                     David L. Schrader
12                                   Brian M. Ercole
                                     Mark A. Feller
13                                   Matthew M. Papkin

14

15                                   By  *David L. Schrader*
                                         David L. Schrader
16
                                     *Attorneys for Defendant Tesla, Inc.*
17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TESLA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS